†CHARLES B. SNELL v. THE CONSOLIDATED STREET RAILWAY COMPANY.

1. WHEN QUESTION OF CONTRIBUTORY NEGLIGENCE SHOULD BE SUBMITTED TO THE JURY.

It is clearly the law of Ohio, as settled by repeated adjudications of the supreme court,
"Where the question of contributory negligence depends upon a variety of circum-
stances from which different minds may arrive at different conclusions as to whether
there was negligence or not, the question ought to be submitted to the jury under ap-
propriate instructions."   And "If the testimony be conflicting, the facts uncertain, *or
the proper inference to be drawn therefrom ·doubtful*, in such case it would be error for
the court to withdraw the case from the jury, or direct them to return a particular ver-
dict."

2. ADMISSIONS INVOLVED IN MOTION FOR NON-SUIT.

A motion by defendant for a non-suit, or for a judgment in his favor on the evidence
offered by the plaintiff, "involves an admission of all the facts which the evidence *in
any degree tends to prove*, and presents only a question of law whether each fact indis-
pensable to the right of action, and put in evidence by the pleadings, has been sup-
ported by *some evidence.*   If it has, the motion must be denied, as no finding of facts
by the court, or weighing of the evidence is permitted."

3. ERROR OF TRIAL JUDGE IN WITHDRAWING EVIDENCE FROM JURY.

The evidence in this case clearly tended to show negligence on the part of the servants of
the defendant company in the management of its car, and which caused the injury to
the plaintiff, and to show his right to recover, if it did not further show that his own
negligence contributed to his injury.   Some of the evidence did tend to show that he
was free from fault, and did not so contribute to his injury.   Or, at the least, it was doubt-
ful on such evidence whether he failed to exercise that care and caution which a man of
ordinary prudence would have exercised under like circumstances.   And as different
minds might reasonably arrive at different conclusions as to this, the action of the
trial judge in sustaining a motion to withdraw the evidence from the jury, and in ren-
dering a judgment for the defendant was erroneous, and an invasion of the right of
the plaintiff to have the question submitted to the jury.

ERROR to the court of common pleas of Hamilton county.

SMITH, J.

It is clear to us that there was such evidence on the part of the plaintiff be-
low, as tended to show, and strongly too, such negligence of the servants of the·
·defendant company, in the management and control of the electric car which
struck and injured him, as to require the trial court to submit the case to the
jury, unless there were other facts disclosed by the evidence, offered by him,
·which showed, as a matter of law, other grounds which would prevent his re-

†The judgment in this case was affirmed by the supreme court, in opinion, 54 O. S., 197.

·covery. The question then is, whether such other grounds appeared—the coun-sel of plaintiff in error claiming that they did not, and of the defendant in error, that they did. If, on an examination of the evidence given before the trial court, it is manifest that such grounds did clearly appear, we are of the opinion that the trial judge was authorized at the close of the evidence of the plaintiff to say to the jury, as a matter of law, that the plaintiff was not entitled to recover, and to ·direct them to return a verdict for the defendant. It cannot be doubted, we think, that in such an action to recover damages, if the undisputed evidence is, that the plaintiff, a person of sound mind, with full knowledge of the approach of an elec-tric car, moving at a high rate of speed, should voluntarily place himself in front ·of it, and suffer himself to be run down by it, even if there was negligence in the running of the car (not amounting to wilfulness or maliciousness), the ac-tion of the court in directing the rendition of a verdict for the defendant would be right. On the other hand, it seems equally clear that under the decisions of the supreme court establishing the law in Ohio, that "where the question of con-tributory negligence depends upon a variety of circumstances, *from which differ-ent minds may arrive at different conclusions*, as to whether there was negligence or not, the question ought to be submitted to the jury under appropriate instruc-tions." 24 Ohio St., 654. Or, as stated in another case in the same volume, page 631, "the question of negligence on the part of the defendant, or of contrib-utory negligence on the part of the plaintiff, is a mixed question of law and fact, to be decided by the jury under proper instructions from the court. But if all the material facts touching the alleged negligence be undisputed, or be found by the jury, *and admit of no rational inference but that of negligence*, in such case the ·question of negligence becomes a matter of law merely, and the court should so ·charge the jury.

"If, however, the testimony be conflicting, the facts uncertain, or the proper inference to be drawn therefrom doubtful, in such case it would be error for the ·court to withdraw the case from the jury, or direct them to return a particular ver-·dict."

In connection with this, must be considered another doctrine of the law well ·settled in this state. As declared by the supreme court in the case of *Ellis & Morton* v. *The Ohio Life Ins. Co.*, 4 Ohio St., 628, "such a motion" (one for a non-suit or a judgment on plaintiff's evidence) "involves an admission of all the facts which the evidence in any degree *tends* to prove, and presents only a question of law whether each fact indispensable to the right of action, and put in issue by the ·pleadings, has been supported by some evidence. If it has, the motion must be denied, as no finding of facts by the court, or weighing of the evidence, is per-·mitted."

The question then presented for our consideration in this case is this: Was the trial court justified in directing the jury to find a verdict for the defendant—in view of the foregoing principles of law above stated, and of the evidence sub-·mitted. This makes it necessary for us to make a statement as to what the un-·contradicted evidence shows, or intended to prove.

About ten o'clock of the day on which the plaintiff, a man of mature years, ·received the injury complained of, he was a passenger on one of the electric cars ·of the defendant company from the city, on his way to his home on Eastern ave-nue, on which is a double track railroad, the cars running eastward using the ·south track, and those coming westward the north track. The plaintiff had been ·in the habit of using these cars daily ever since the electric cars had been in use —that is, for several years. When near the place where he was accustomed to alight from the car, which was at a public crossing for foot passengers, the con-·ductor, who knew him, of his own accord caused the car to slow up, and the plaintiff alighted therefrom at the crossing while the car was still in motion, and it moved on without having come to a full stop. The plaintiff had gone to the rear platform and stepped from the south side thereof on to the granite paved ·street, facing to the south as he alighted. He then faced to the west, and looked·

down the tracks to see if any car was approaching from that direction, but there was none. He then started to cross the two tracks to reach the sidewalk on the north side of the street, his residence being on that side. At the time that he was doing this, the evidence tends strongly to show that a west bound car was coming on the north track at the speed of from fifteen to twenty miles an hour, and if it is beneficial to the plaintiff to do so, it must be admitted that it was running at the highest rate of speed named by any witness, viz.: twenty miles an hour—and the evidence further tended to show that no gong was sounded, or any alarm signal of any kind was given by those managing the car—that it was running on a down grade, and that no attempt was made to set the brake until the car was within twenty feet of the crossing on which the plaintiff was, and that the momentum of the car was so great that it ran 100 feet west of the crossing before it was stopped. In addition to this there was evidence that the person acting as motorman was new to the business, and had only been learning it for two or three days, and that at the time another man was with him instructing him in his duties.

As we have before said, these facts strongly tended to show negligence on the part of the defendant company. It is true that there was no direct evidence as to the rate of speed at which west bound cars usually ran at that point, or whether or not they were accustomed to sound a gong or slow up as they approached a crossing, but we think it is apparent from what is testified to, that the rate of speed was so rapid and unusual that it attracted the attention of those who testified. But if this were not so, we think neither the court nor the jury, if the case were submitted to them, could close their eyes and ignore the knowledge which persons of ordinary judgment and intelligence have of the usages and customs of those operating street railroads, on the streets and at the crossings in a city, and that it is not usual to run at a very high rate of speed on the streets or over the crossings, or without giving warning of their approach. And on the evidence submitted, as before stated, we think it tended to show negligence on the part of the defendant company, and unless it also showed contributive negligence on the part of the plaintiff as a matter of law, the case should have been submitted to the jury.

And this is the question of difficulty. On this point the additional evidence tended to show this state of fact. That after alighting from the east bound car, and looking to the west, or diagonally across the street, the plaintiff, in a leisurely way, started to cross the two tracks, thus to reach the north sidewalk, passing the rear end of the moving east bound car. He had made no attempt, before leaving the car, to look through the windows to see if a car was appoaching him from the east on the north track, nor after stepping from the car did he look up the tracks to ascertain this before he stepped upon the south track. The testimony most favorable to his case, as given by himself, as to his conduct and what took place thereafter, is substantially this: That after he stepped from the car, he heard no gong sounded, "or any thing," and did not see or hear the approaching car before, or while crossing the south track, though his eyesight and hearing were good, and the gong could have been heard if sounded while a square distant from him. He says he first began to think of a west bound car when he was passing around the west end of the car from which he had alighted. That just as he was about to step upon the track (as he states in one place), he looked up and saw the west bound car coming at full speed, and so fast that he had only time to throw up his hand to guard himself from going on the (north) track, and the car, which projected one foot over the rails, struck his arm, turning him around, and striking him in the back, threw him across the south track, injuring him severely. He also says that the reason why he could not see the car before he did, was, that the car from which he had alighted hid the other. That he was looking for the car, and using his eyes and ears, before he was struck; that the car from which he alighted prevented his seeing the car which struck him, and owing to the great speed at which it came (for it was running very fast that morn-

ing), he could not avoid it, though he states that the east bound car had moved about ten feet, when he first saw the other car approaching.

Another witness, who testified that he was in a position where he could see much of what took place on that occasion, said that he "saw the plaintiff as he stepped between the rails of the east bound track (it having been shown that the tracks were about five feet wide between the rails, and that the space between the two tracks was three feet), and was approaching the down track; that when he first saw him he was looking down the tracks toward the city; that is diagonally across the street. That as he approached the other track, his (plaintiff's eye) was directed toward any car that might be approaching (from the east), but the car he got off of obstructed his view, for the car that hit him was too far up for him to see it, and that by the time he got where he could see it, the car was on him and struck him;" that it was running "like fury." That the brake was not set, while the car was running down the grade at the rate of fifteen to twenty miles an hour, and that the motorman only undertook to set it when he was about twenty feet from where the plaintiff was struck. He further testified that when the plaintiff looked east, as if to see an approaching car, he was still between the rails of the east bound track.

This, we think, is a fair statement of the evidence on this point. It may be claimed that the cross-examination, or the other answers of the witnesses, which varied the statements in some respects, fairly tended to throw doubt upon some of them. But the question of the truth of the evidence was not one to be passed upon by the trial judge, on a motion of this kind, but full credence should have been given in such case, for the purposes of such motion, to the strongest statements in support of the plaintiff's claim. And the question remains whether as a matter of law in the case, there was any evidence which entitled the plaintiff to have the case go to the jury.

We recognize the fact that the law required of this man the care and caution which men of ordinary prudence are accustomed to exercise under like or substantially similar circumstances. And that the failure to do this, except under special circumstances which operate to excuse him from doing so, ought to prevent his recovery of damages for an injury to which his negligence or want of care thus contributed. But where circumstances are shown, which tend to raise a doubt as to whether he has or has not exercised the proper care required of him, or, in the language of the court in 24 Ohio St., 654, before quoted, "when it depends upon a variety of circumstances from which different minds may arrive at different conclusions as to whether there was negligence or not," a question of fact and not of law is presented, and must be settled by the appropriate tribunal, viz., the jury, and not the judge.

It must further be conceded in considering this question, that, as a general rule, the law imposes upon a person, who is about to cross railroad tracks, over which he knows that cars are frequently run in both directions at a high rate of speed, which would make a collision with it dangerous, the duty of using his senses to avoid such collision. He should, at the very least, look and listen, and not unnecessarily and without the use of ordinary care, assume such great risk. But it is clear, and reasonable and right, that all the circumstances surrounding the particular transaction should be considered and taken into the account, in determining whether in that case there was care or negligence. We esteem it to be true that much less vigilance is ordinarily shown by prudent persons in a crowded street of a city, or at a crossing, where, from the nature of the case, street cars have to, and do move more slowly than would be shown if they were allowed to and did go at a much more rapid rate of speed—and what might be deemed due care if exercised when the slow speed was uniformly adopted, would not be such when much more rapid transit was allowed. And so in regard to the rate of speed at a city crossing, the ringing of gongs, etc. If the conduct of the plaintiff in this case was careful, in view of the way in which the road at this point was usually operated, and the injury was brought about by a disregard of those

usages, by the defendant company, upon which usages he had a right to and did rely, and he was thus lulled into security, and had no reason to look for a difference in the operation of the road at this time, this, we think, would be one of the circumstances which the jury would have had a right to consider, in passing upon the question whether the plaintiff exercised due care.

But, however, this may be, it is enough for us to say, that if we are to credit the strongest claims made for the plaintiff, by himself and witnesses (as we are bound by the law in a case of this kind to do), we are of the opinion that the court was not justified in weighing the evidence, as must have been done, and deciding that there was contributory negligence on the part of the plaintiff, and in withdrawing the evidence from the jury. It has been said it tended to prove that while approaching the down track, that he listened for the signals of an approaching train, and heard none. That while still on the south track, he looked eastwardly, up the track, to see if a car was approaching, but owing to the interposition of the east-bound car, he could not see it. That when he stepped upon the three-foot space between the two tracks, he saw the car nearly upon him, running at a very high rate of speed, and could do nothing to escape but throw up his arm. Can it be properly said that here was such a state of facts shown as to the care exercised by the plaintiff, as to which different persons of sound judgment, could not or might not, reach different conclusions? We think it can not.

While we are of the opinion that the court erred in not sending the case to the jury, speaking for myself, I would say that I incline to the belief that on the facts disclosed by the evidence for the plaintiff, he was not free from fault, but was negligent in not stopping until the east-bound car got out of the way, so that he could see whether another car was approaching from the east. And if the trial court had submitted the case to the jury, on this evidence, and a verdict had been returned for the plaintiff, and it had been set aside by the judge, it would seem to me that the law had been properly administered. But, as I understand, my associates would hardly agree with me as to this, or that such a verdict ought necessarily to be set aside as against the weight of the evidence. But the fact that persons of considerable experience would probably differ as to the legal effect of such evidence, only emphasizes the reason and propriety of the rule that forbids such questions of fact, on a motion of this kind, to be settled as a question of law. In our judgment, the better and safer practice, and that clearly required by the law of this state, is, to submit such questions, where there may be any doubt whatever, to the tribunal established under our constitution and laws, for the decision of question of fact (in law, as opposed to equity cases) — leaving any manifest error, or mistakes of the jury in its finding thereon, to be corrected by the trial judge, as he has a clear right to do.

The judgment in this case will be reversed, and the cause remanded for a new trial.

*Wolfe & Michie*, for Plaintiff in Error.

*J. W. Warrington* and *Mr. Simmons*, for Defendant in Error.